599 So.2d 138 (1992)
STATE of Florida, Appellant,
v.
Freeman Edgar CROSBY, Appellee.
No. 90-1850.
District Court of Appeal of Florida, Fifth District.
April 24, 1992.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellee.
PER CURIAM.
The defendant stands charged below of one count of sexual battery in violation of section 794.011(2), Florida Statutes, and one count of lewd and lascivious act upon a child under the age of sixteen in violation of section 800.04(1), Florida Statutes. The defendant moved to suppress certain statements he made to the police which he alleged were involuntary and in violation of his Miranda[1] rights. After conducting a hearing, the trial court granted the motion. We reverse.
The suppression hearing began with the testimony of Detective Elizabeth Gilbert of the Palm Bay Police Department. She testified that on April 6, 1990, at 8:15 p.m., the defendant appeared at the police station. *139 He had been contacted by telephone and asked to go there. When he arrived, another detective was speaking to a complainant, Mike (the alleged victim) and to Mike's mother. The victim alleged that approximately five years earlier, when he was eleven (later determined to be twelve) and the defendant was fifteen, the defendant committed the acts with which the defendant is now charged.
Detective Gilbert introduced herself to the defendant and spoke with him in a portable trailer which served as an annex to the police station. They sat in an open area, about 12' X 12'. Gilbert advised the defendant that there had been some sexual charges made against him by Mike. The defendant said he knew Mike and the detective asked if she could interview him concerning the charges. The defendant responded "Okay, No problem". Detective Gilbert, who testified the defendant was not under arrest, read the defendant his Miranda rights from an interview sheet containing eight questions.[2] She asked the defendant each question separately, obtaining and recording an affirmative response to each. She also asked defendant's educational level which he reported to be tenth grade.
The defendant's statement concerning the alleged offenses was recorded on microcassette tape and was played in full at the state's request during the suppression hearing. At the beginning of the recorded statement the defendant was sworn, stated he had been informed of his Miranda rights, understood his rights and wished to give the statement.
The defendant acknowledged he and Mike were friends but initially he denied he and Mike ever had any sexual contact. After being reminded he was under oath, the defendant stated he and Mike had on a couple of occasions engaged in some sexual touching. After the defendant seemed to become embarrassed, Detective Gilbert stated:
I realize this is embarrassing for you, but I talk to kids all the time about this sort of thing. All right? So anything that you say to me is not going to shock me or embarrass me because I've talked to a lot of kids before. So if you do have something to say and if something more happened, I don't want you to feel like you can't tell me. Okay? So why don't you just take a deep breath and think back... .
The defendant then described one incident where Mike had sodomized the defendant. The defendant tried to do the same to Mike but he saw he was too large to fit and did not attempt penetration.
The defendant, who was twenty years of age at the time of the police questioning, testified at the suppression hearing that he went down to the police station of his own free will. He stated that he was not told what he was charged with or what the interview was about. He described himself as emotionally handicapped and a slow learner. The defendant testified he understood some but not all of his Miranda rights. The defendant remembered being told he did not have to talk but thought it was the best thing. He did not think he was going to be charged with a crime. There was no expert testimony offered concerning the defendant's I.Q. or level of comprehension.
The trial court granted the motion to suppress, finding:

*140 1. That the Defendant, FREEMAN EDGAR CROSBY, was not in custody at the beginning of the interview by Detective Betsy Gilbert at the Palm Bay Police Department on April 6, 1990.
2. That the Defendant was fully advised of his Miranda rights by Detective Gilbert.
3. That the Defendant has a ninth grade education and mentality.
4. That the Defendant did not invoke his Miranda rights during the course of the interview by Detective Gilbert.
5. That a person of normal intelligence would have invoked his rights during the interview by Detective Gilbert.
6. That the Defendant is childlike and unable to comprehend being in jeopardy.
7. That the Defendant did not understand his Miranda rights and did not freely and voluntarily waive them.
Both parties to this appeal seem to agree that the dispositive issue is the "voluntariness" of the defendant's confession. Issues involving confessions by persons of subnormal intelligence are often discussed in terms of "voluntariness". See, e.g., Thompson v. State, 548 So.2d 198, 203 (Fla. 1989).
The state relies principally on Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In Connelly the United States Supreme Court held that coercive police activity is a necessary predicate to a finding that a confession is not "voluntary" within the meaning of the due process clause of the Fourteenth Amendment. The dissent in Connelly warned that the Connelly majority had abandoned the court's previously announced "totality of the circumstances" test to determine whether a confession was the product of a defendant's free will. Connelly, 479 U.S. at 177-181, 107 S.Ct. at 527-529 (Brennan, J., dissenting). If coercive conduct on the part of the police is the sole test, our task is considerably simplified. See Moore v. Dugger, 856 F.2d 129, 132 (11th Cir.1988) (defendant had I.Q. of 62, functional age of 11 years old, but no police coercion). The lower court orally ruled at the close of the suppression hearing that the police had acted properly. ("I don't blame the officer for anything that she did in the interrogation. I think it was well done.")
It is not at all clear, however, that, after Connelly, the "totality of the circumstances" test is dead. The Illinois Supreme Court, in a factual context very similar to the case at bar, recently analyzed this question and concluded that an independent requirement that a Miranda waiver be knowing and intelligent, as well as voluntary, still exists. People v. Bernasco, 138 Ill.2d 349, 150 Ill.Dec. 155, 159, 562 N.E.2d 958, 962 (1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991). See also United States v. Bradshaw, 935 F.2d 295, 299-300 (D.C. Cir.1991).
Initially, we conclude the Miranda warnings given in this case were unnecessary. Crosby was not in custody; he voluntarily came to the police station when he learned the police wanted to talk to him. He was interviewed in a portable trailer annexed to the police station and was free to leave at any time. The court specifically found that Crosby was not in custody "at the beginning of the interview." The interview sheet was marked to show he was only being interviewed, not arrested, and this was signed by the defendant. Detective Gilbert testified he would have been free to leave because they did not have enough evidence to arrest him until he gave his statement. Miranda is only applicable when a suspect is interrogated while in police custody. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See also Roman v. State, 475 So.2d 1228 (Fla. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986).
The absence of custodial interrogation places Crosby's statements in a context more analogous to Connelly's original confession in Connelly. Connelly voluntarily approached an officer and confessed to murder before any Miranda warnings were given. The Supreme Court, although acknowledging Connelly's mental incapacity, nevertheless permitted the confession. The Court held:

*141 We hold that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. We also conclude that the taking of respondent's statements and their admission into evidence, constitutes no violation of that Clause.
Connelly, 479 U.S. at 167, 107 S.Ct. at 522. Under Connelly, the mental condition of Crosby in the absence of police misconduct does not affect the admissibility of his statements or confession under federal due process requirements or under the exclusionary rule.
Assuming arguendo the Miranda warnings given were necessary in this case, we have also considered the waiver issue. Without addressing the Connelly issues discussed in Bernasco, Bradshaw and other cases, our supreme court, in an opinion written three years after Connelly reiterated the duty of the trial court to ascertain the defendant's waiver of Miranda rights was knowing and intelligent as well as voluntary. Thompson, 548 So.2d 198. The Thompson court held that mental weakness is but one factor to be taken into account in determining the voluntariness of a confession. Comprehension of the rights described to the defendant and a full awareness of both the nature of the rights being abandoned and the consequences of abandonment are also factors to consider in determining whether "through susceptibility to surrounding pressures or inability to comprehend the circumstances," a statement made to police was not a product of the defendant's own free will. Id. at 204. This determination is made using the "totality of the circumstances" approach. Id. Accordingly, we will attempt to determine the correctness of the suppression order below by reviewing the totality of the circumstances, as required in Thompson.
The rule in Florida generally is that the trial court's conclusion on the issue of voluntariness will not be upset on appeal unless clearly erroneous. Id. at 204 n. 5. However, our supreme court has said this clearly erroneous standard "does not apply with full force in those instances in which the determination turns in whole or in part, not upon live testimony, but on the meaning of transcripts, depositions or other documents reviewed by the trial court, which are presented in essentially the same form to the appellate court." Id.[3]
In the instant case, the trial court made three predicate findings for its suppression order: first, that a person of normal intelligence would have invoked his rights; second, the defendant is childlike and unable to comprehend being in jeopardy and, finally, the defendant did not sufficiently understand his Miranda rights so as to freely waive them. The first of these reasons simply cannot stand as a basis for involuntariness of a waiver of rights. The fact is that persons of ordinary intelligence often do waive their right not to incriminate themselves and do confess to crime for reasons other than overreaching, coercive police conduct. Indeed, the futility of accurately divining the reason for a person's decision to admit to the commission of a crime while being interrogated after being advised of his right to remain silent, favors a bright line-rule like the one announced in Connelly that limits suppression to cases of police misconduct. Even under the most liberal test of voluntariness, what a person of normal intelligence may have done is irrelevant.
It is possible, on the other hand, to determine whether the defendant's "childlike" nature meant that he did not understand he was in jeopardy or did not understand his rights well enough to effectively waive them. As stated, whether a waiver was knowing and intelligent is determined by evaluating the "totality of the circumstances" surrounding the defendant's giving of the statement. Several courts have attempted to catalogue the factors that comprise the "totality of the circumstances" to determine whether a confession *142 is knowing and intelligent. These factors include mental capacity or I.Q., age, physical condition, demeanor, coherence, articulateness, capacity to make full use of one's faculties, memory, level of education, level of reading skill, time of interrogation, prior record or experience with the criminal justice system. E.g., Thompson, 548 So.2d at 204; Ross v. State, 386 So.2d 1191 (Fla. 1980); State v. Reid, 394 N.W.2d 399 (Iowa 1986); State v. Shaver, 233 Mont. 438, 760 P.2d 1230, 1233 (1988); See generally Annotation, Mental Subnormality of Accused as Affecting Voluntariness or Admissibility of Confession, 8 A.L.R.4th 15, 24-28 (1981). The result of this approach is a complete lack of consistency and frequent disparity of result. Some defendants whose mental capacities and emotional resources were extremely limited have been found to have knowingly and intelligently waived their rights, whereas others whose limitations appear slight are protected. This high degree of arbitrariness suggests a better test is needed.
Faced with the same record to review as the trial court we simply cannot agree that the defendant lacked the requisite comprehension of his rights or that he did not understand that he was in jeopardy when he gave the statement. The audiotape of the interview simply belies that conclusion. Early in his interview with Detective Gilbert, when the defendant began discussing what occurred, he made the remark: "I'll probably end up going to jail on this but  ." Detective Gilbert responded:
I'm not going to tell you either way, cause first of all it's not my case. I'm just hear [sic] to interview you and talk to you and I appreciate that you're being honest with me. And as soon as I do hear something, I will let you know what's going on.
This record reflects a consistent pattern of coherent statements and appropriate responses by the defendant which meets or exceeds the "knowing and intelligent" threshold for waiver of Miranda rights. There was no expert testimony offered that might have supported a conclusion that these apparently knowing and intelligent statements were not what they seem. Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). Nor was there expert testimony to show that the defendant's mental limitations were severe enough to make him incapable of understanding his rights. Thompson, 548 So.2d at 203.
The purpose of the exclusionary rule is to prevent forced statements, especially forced false statements. The Fifth Amendment is not designed to protect those whose limited mental or emotional capacity is such that they lack the education, skill or intelligence to protect themselves as well as other more intelligent or more wily offenders. Absent some evidence that the defendant's statements were given because his free will was overborne, his statements to law enforcement were not subject to suppression.
REVERSED and REMANDED.
GRIFFIN, J., concurs.
HARRIS, J., concurs specially with opinion.
COWART, J., dissents with opinion.
HARRIS, Judge, concurring specially.
I concur with the majority's holding that Miranda warnings were unnecessary in this case. I also agree that the record does not support a finding that Crosby's mental condition was sufficiently deficient to vitiate his Miranda waiver.
I write because I believe Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), requires a closer look at the specific motion filed in this case and the effect that Connelly appears to have on the "totality of the circumstances" test reaffirmed in Thompson v. State, 548 So.2d 198 (Fla. 1989), when the issue is voluntariness.
If Miranda warnings were required, they were waived in the case at bar. Crosby sought to avoid his waiver on the theory that his mental deficiency prevented a "voluntary" waiver. Crosby was advised that he was being interviewed in connection with an allegation of sexual battery. He *143 was then asked a series of questions and his answers were written down.[1] Although Crosby had finished the ninth or tenth grade, the record adequately reflects that he was a slow learner. However, the questions were asked in such a manner so that even the less intelligent can understand them.[2] Further, the one being questioned is asked after each question (so that only a short attention span is required) whether he, in fact, understands the rights being given. At the hearing to suppress, Crosby admitted that he chose to talk to the police because he thought "that would be the best thing to do." He admitted at the hearing that he understood "quite a few" of his Miranda rights but that although he knew he was entitled to an attorney, he "didn't know where they was going to get an attorney at." And even though the officer said an attorney would be appointed for him if he couldn't afford one, "she did not say that she would call one for me like my public defender, Mr. McCarthy, said." The defense moved to suppress only on the basis that the confession was involuntary  primarily because the police officer conducting the interview was "a nice lady." But being "nice" and employing a sympathetic, encouraging manner has never been proscribed as being police misconduct. And Connelly has laid to rest any notion that either the confession or the waiver of Miranda rights can be avoided based on the lack of voluntariness unless police misconduct is present.
We hold that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. We also conclude that the taking of respondent's statements and their admission into evidence, constitutes no violation of that Clause.
* * * * * *
There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context.
Connelly, 479 U.S. 157, 169-70, 107 S.Ct. 515, 522-23.
Therefore, suppressing the statements on the basis requested by the motion was clearly error.
However, a more intriguing issue is raised by the implied finding of the court's order suppressing evidence. Even though the matter was submitted to the court on the "voluntariness" issue, the order can be interpreted as a finding that the Miranda waiver was invalid because it was not knowingly and intelligently made.
This distinction is discussed in Bernasco. I have doubts about the conclusion of the Bernasco court that Connelly, in the absence of police misconduct, will permit the mental condition of the defendant to vitiate the waiver of the Miranda warnings (but not the confession) and bar the introduction of an otherwise admissible confession because the waiver was not knowingly and intelligently made. The Bernasco conclusion is based on that court's analysis of Connelly and Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).
It should be noted that Burbine was released nine months before Connelly and was referred to in the Connelly decision. The importance of Burbine, according to Bernasco, is that:
According to Burbine, an inquiry into Miranda waiver has "two distinct dimensions": (1) whether there was a free, uncoerced choice and (2) whether there was awareness of the right and the consequences of abandoning it[.] ... A valid Miranda waiver would thus require "both an uncoerced choice and the requisite level of comprehension."
*144 People v. Bernasco, 138 Ill.2d 349, 150 Ill.Dec. 155, 157, 562 N.E.2d 958, 960 (1990).
In Burbine, the mental capacity of the defendant was not the issue. In that case, the police withheld information from the defendant that an attorney, retained by his sister, was attempting to contact him. The Court upheld the waiver "because respondent's voluntary decision to speak was made with full awareness and comprehension of all the information Miranda requires the police to convey" ... Burbine, 475 U.S. at 424, 106 S.Ct. at 1142.
The Court did say in Burbine:
Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the state's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.
Id. 475 U.S. at 422, 106 S.Ct. at 1141.
While it is difficult to believe that someone with "a ninth grade education and mentality" (as found by the trial judge in this case) could not comprehend the simple requirements of Burbine, after Connelly, the defendant's mental condition may no longer be relevant in a Fifth Amendment (Miranda) analysis.
A reading of the Connelly majority opinion indicates that if the Colorado Supreme Court should decide to suppress the statements after remand, it must do so either on the Colorado constitution or on Colorado law  not on the federal exclusionary rule.
Admittedly some confusion remains concerning the independent knowing and intelligent standard because of the footnote which ends the majority opinion:

It is possible to read the opinion of the Supreme Court of Colorado as finding respondent's Miranda waiver invalid on other grounds. Even if that is the case, however, we nonetheless reverse the judgment in its entirety because of our belief that the Supreme Court of Colorado's analysis was influenced by its mistaken view of "voluntariness" in the constitutional sense. Reconsideration of other issues, not inconsistent with our opinion, is of course open to the Supreme Court of Colorado on remand. [Emphasis added.]
Connelly, 479 U.S. at 171, n. 4, 107 S.Ct. at 524 n. 4.
While the footnote seems to indicate that the Miranda waiver may be reviewed based on an independent "knowing and intelligent" standard, to exclude on that basis, under the Miranda exclusionary rule (as opposed to state constitutional or statutory or rule basis) when there is no police misconduct, would appear to be inconsistent with the broad language of the majority opinion. Even Justice Brennan, in his dissent, seems to have some doubt as to the meaning of the footnote:
Such would include, in my view, whether the requirement of a knowing and intelligent waiver was satisfied[.] ... Moreover, on the remand, today's holding does not, of course, preclude a contrary resolution of this case based upon the State's separate interpretation of its own Constitution. [Emphasis added.]
Connelly, 479 U.S. at 188, 107 S.Ct. at 533.
In the first place, the footnote suggests further review of some indistinct ground relied on by the Supreme Court of Colorado in its decision to suppress. The waiver issue based on the "knowing and intelligent" standard was clearly set out in the Colorado Supreme Court opinion:[3]
The basis for the suppression motion was that the defendant was mentally incompetent at the time of his confession, thereby rendering his confession involuntary and precluding a valid waiver of his Miranda rights. [Emphasis added.]
* * * * * *
The court further concluded that, because the defendant's psychosis compelled him to follow the mandate of God and confess to the crime rather than kill himself, the prosecution had not carried its burden of proving by clear and convincing evidence that the defendant had *145 voluntarily, knowingly, and intelligently waived his Miranda rights. [Emphasis added.]
* * * * * *
The testimony of Dr. Metzner clearly established that the defendant's mental condition on August 18, 1983, was such that he was incapable of making an intelligent and free decision with respect to his constitutional right of silence while in custody and his constitutional right to confer with a lawyer before talking to the police.
Connelly, 702 P.2d at 724-29.
The majority of the United States Supreme Court in Connelly had no difficulty in recognizing this concern about the defendant's mental condition. It stated:
The evidence fully supported the conclusion that respondent's initial statement was not the product of a rational intellect and a free will. The court then considered respondent's attempted waiver of his constitutional rights and found that respondent's mental condition precluded his ability to make a valid waiver. [Emphasis added.]
* * * * * *
The trial court also found that Connelly's mental state vitiated his attempted waiver of the right to counsel and the privilege against compulsory self-incrimination.
Connelly, 479 U.S. at 162-63, 107 S.Ct. at 519-20.
The Supreme Court then discussed the effect the defendant's mental condition should have on his federal constitutional and procedural (Miranda) rights. The Court seemed to conclude, in the absence of police misconduct, that the mentally impaired are granted no superior right to federal constitutional or procedural protection from confessions and statements.
We conclude that the admissibility of this kind of statement is governed by state rules of evidence, rather than by our previous decisions regarding coerced confessions and Miranda waivers.
Connelly, 479 U.S. at 159, 107 S.Ct. at 518.
The Supreme Court was well aware of the trial court's dual finding that (1) the waiver of Miranda rights was not voluntarily made and (2) the waiver was not intelligently and knowingly made. Still the Court stated:
The sole concern of the Fifth Amendment on which Miranda was based, is governmental coercion. [Emphasis added.]
and
Miranda protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that. [Emphasis added.]
Connelly, 479 U.S. at 170,[4] 107 S.Ct. at 523.
*146 Connelly seems to have limited Fifth Amendment and Miranda protection to those cases involving government misconduct. If so, the footnote granting authority to the Colorado Supreme Court to reconsider other issues may have contemplated reviewing such statements and confessions under appropriate Colorado law; for example, the "derivative evidence rule" which "serves to exclude evidence obtained as a result of a violation of the defendant's constitutional rights" and "applies not only to Fourth Amendment violations but to Fifth and Sixth Amendment violations as well." Connelly, 702 P.2d at 729.
It is more probable, however, that the Supreme Court was referring the matter back to the Colorado Supreme Court to determine if the defendant's mental condition would make his statement inadmissable under Colorado's evidence code because of its unreliability. The majority in Connelly stated:
A statement rendered by one in the condition of respondent might be proved to be quite unreliable but this is a matter to be governed by the evidentiary laws of the forum ... and not by the Due Process Clause of the Fourteenth Amendment.
Connelly, 479 U.S. at 167, 107 S.Ct. at 521-22.
It is possible, of course, that the Court was authorizing further exploration of an independent "knowing and intelligent waiver" standard. The Court was, after all, severely criticized by Justice Brennan in his dissent for expanding the certiorari review by requiring briefs on the effect of the defendant's mental condition on the Miranda waiver. If, in fact, the "knowing and intelligent" standard was not properly briefed, then the Court's referring that issue back to the Colorado Supreme Court is understandable. But referring the issue back to the Colorado Supreme Court does not assure that the United States Supreme Court would concur in a finding that such standard, independent of police misconduct, would justify suppression under Miranda. The language in Connelly strongly suggests that it will not.[5]
Even if the knowing and intelligent waiver standard independent of the voluntariness issue, has survived Connelly, I would reverse the trial court because it used the wrong standard in determining whether the waiver was knowingly and intelligently made.
The trial court was most concerned with whether this young man understood the concept of jeopardy. The court believed that since on two previous occasions Crosby had made statements to the police after Miranda warnings, and no arrest was immediately made, that he did not understand the risk of arrest that he was taking in waiving the Miranda rights. But that is not the test. The test was merely whether he was capable of understanding his rights under Miranda and the consequence of his waiver. The consequence of waiving Miranda is not his arrest (that is the consequence of the crime) but the fact that the statement may be used against him if the matter proceeds to trial. The proper inquiry into Crosby's capacity to waive under the knowing and intelligent standard, perhaps because it was not raised in the motion, was not properly addressed.
COWART, Judge, dissenting.
The State appeals a trial judge's order suppressing an incriminating statement made by the defendant to a law enforcement *147 officer. The issues before the trial judge were (1) whether the defendant's inculpatory statement was voluntary and otherwise legally obtained, (2) whether the defendant knew and understood his constitutional rights to remain silent and to have counsel present, and (3) whether the defendant had the ability to, and did, intentionally and intelligently relinquish and waive those known rights.
These are factual issues, not legal issues. We should not merely give lip service to the law that a trial judge's findings of fact after an evidentiary hearing come to this appellate court with a presumption of correctness and then proceed to reverse the trial judge who made them in this case. Appellate courts should defer to the trial judge's conclusions relating to such factual matters as knowledge, understanding and intention when they are based on the trial judge's observations and judgment decisions after hearing the testimony and weighing evidentiary factual issues relating to the defendant's intelligence, mental condition, knowledge and understanding of his constitutional rights to remain silent and to have the advice of counsel at hand, the defendant's comprehension and awareness of the State's intention to use his statements to obtain his conviction, and the defendant's ability to comprehend and to understand and to make a knowing and intelligent waiver of known legal rights.
Neither the issue below, nor that on this appeal, turns on any complicated issue of law. The only point of law on this appeal is that relating to what weight should be given by an appellate court to factual findings made after an evidentiary hearing. That law governing this case is simple: a trial judge's order suppressing evidence based on such evidentiary findings and factual conclusions should be upheld on appeal unless clearly erroneous. The trial judge's factual findings and conclusions should not be disregarded and the evidentiary factual basis for them reweighed and the differing opinions of the appellate court judges substituted for those of the trial judge.
The majority opinion states,
Faced with the same record to review as the trial court we simply cannot agree that the defendant lacked the requisite comprehension of his rights or that he did not understand that he was in jeopardy when he gave the statement[,]
unless, it is suggested, some "expert" testifies to the contrary. The trial judge did not "review" a "record" but saw and heard the interrogating law enforcement officer and the defendant who both testified at the suppression hearing. The trial judge saw their demeanor while testifying, heard and evaluated their testimony, considered their candor and credibility and personally observed the defendant's apparent ability to think, to understand, to comprehend, to be aware, to answer questions, to make judgment decisions, etc. The burden of proof was on the State, the trial judge saw and heard the witnesses, weighed the evidence, and came to the conclusion that the State's showing was unconvincing and factually insufficient. His decision, based on his opinion as to the factual matters involved, does not have to be supported by "expert testimony" in order to be upheld on appeal. As a matter of fact a trial judge sitting as the trier of fact is the only professional or "expert" as to the process involved which is one of evaluating and weighing testimonial evidence to arrive at a conclusion as to the truth as to the material ultimate facts and then correctly applying the applicable law to those facts in order to reach a final and correct legal conclusion.
The conclusion of the trial judge, in suppressing the defendant's statement, was basically a factual one based on his evaluation of the convincing force and effect of the testimony of live witnesses as to many factual details material to the factual issues involved and his conclusion should be given weight and upheld because it was not, legally or factually, clearly erroneous.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] You are (under arrest for/being interviewed in connection with) sexual battery.
2. You have a right to remain silent. You do not have to make any statements. You do not have to answer any questions. Do you understand this?
3. Anything you do say can and will be used against you in court. Do you understand this?
4. You have a right not to answer any particular question and you may stop the interview at any time. Do you understand?
5. You have a right to consult with a lawyer now and at any time during this interview. If you cannot afford a lawyer one will be provided for you without any cost to you at any time. Do you understand?
6. Do you want a lawyer present now?
7. Knowing these rights, are you willing to make a statement or answer questions without a lawyer being present?
8. Have any threats or promises of any kind been made to you so that you will give us a statement?
[3] There is also some debate whether the knowing, intelligent and voluntary nature of a confession is a pure question of fact. See Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).
[1] See majority opinion, footnote 2.
[2] The fact of mental subnormality or impairment alone does not render a confession involuntary except in those rare cases involving subnormality or impairment so severe as to render the defendant unable to communicate intelligibly or understand the meaning of Miranda warnings even when presented in simplified Xform. Thompson v. State, 548 So.2d 198 (Fla. 1989).
[3] People v. Connelly, 702 P.2d 722 (Colo. 1985).
[4] It is important, however, to mention Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). In Patterson, the court considered whether there was a "knowing and intelligent waiver" (as opposed to voluntary) of the Sixth Amendment right to counsel. Miranda warnings had been given to a post-indicted prisoner who waived the presence of counsel. It was not alleged that the defendant was mentally deficient. Instead it was urged that the Miranda warnings do not adequately advise the suspect that, after indictment, he is entitled to counsel so that, in so far as the Sixth Amendment is concerned, a waiver of Miranda does not knowingly and intelligently waive the Sixth Amendment right to counsel.

The court stated:
In the past, this court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege[.] ... In a case arising under the Fifth Amendment, we described this requirement as "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." [Citing Burbine.]
Patterson, 487 U.S. at 292, 108 S.Ct. at 2395.
The court then held that the Miranda warnings were sufficient to advise of the Sixth Amendment right to counsel and a waiver of Miranda was an adequate waiver of the Sixth Amendment rights.
The Patterson court clearly acknowledges an independent knowing and intelligent waiver requirement separate from voluntariness but does not discuss it in the Connelly context. The court did not retreat from the Connelly language that both Fifth Amendment and Miranda relief from confessions and statements require police misconduct. Indeed the court held:
If petitioner nonetheless lacked "a full and complete appreciation of all of the consequences flowing" from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum.
Patterson, 487 U.S. at 294, 108 S.Ct. at 2396.
[5] I confess to being confused by the holding in Thompson v. State, 548 So.2d 198 (Fla. 1989). Even after Connelly, but without acknowledging Connelly, the court reaffirmed that Florida follows the "totality of the circumstances" test in cases involving the alleged waiver of constitutional rights and continues to address the issue in the terms of "voluntariness." It is not my intention to disregard the holding of the supreme court. I truly believe that the issues discussed in this concurring opinion simply were not considered by the Thompson court.