670 So.2d 103 (1996)
STATE of Florida, Appellant,
v.
Lebaron MALLORY, Appellee.
No. 95-1522.
District Court of Appeal of Florida, First District.
February 28, 1996.
Rehearing Denied April 15, 1996.
*104 Robert A. Butterworth, Attorney General; Vincent Altieri, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender; Raymond Dix, Assistant Public Defender, Tallahassee, for Appellee.
VAN NORTWICK, Judge.
The state appeals an order of the trial court granting the motion of Lebaron Mallory, appellee, to suppress his statements incriminating himself. We are required to reverse because the reasons offered by the trial court as support for the suppression are invalid. We remand to the trial court with directions to reevaluate the evidence, without consideration of the invalid reasons, to determine if suppression is warranted.

Factual and Procedural Background
On August 3, 1994, while in custody on other charges, Mallory was advised of his *105 Miranda[1] rights and was interrogated by Investigator Kent Vancil concerning his possible involvement in the sexual abuse of Mallory's three year old niece. Vancil asked Mallory if he would take a computer voice stress analysis (CVSA) test[2] the next day, which Mallory agreed to do. According to Mallory, Vancil told him if he wanted to get out of jail by his son's birthday he would have to cooperate, and that if he took the stress test he would get out of jail faster. In addition, Vancil told him that he would tell the judge he cooperated. According to Vancil, Mallory was not physically coerced or threatened and was not promised anything in return for taking the test. He told Mallory that he would let it be known to the court and others that Mallory cooperated by taking the test, but Vancil said he never promised Mallory that he would get out of jail if he took the test.
The next day, after being given his Miranda rights again, Mallory took the test, which was administered by Deputy Powell of the Escambia County Sheriff's Department. The officers told Mallory that the test showed he had given deceptive answers. Thereafter, Mallory gave statements incriminating himself.
In his subsequent prosecution for sexual battery, Mallory sought to suppress his statements, contending they were not freely and voluntarily made and were induced by representations calculated to delude him as to his true position and to exert undue influence over him. A hearing was held, but the trial court did not immediately rule. At a subsequent hearing, when urged to make a ruling on the motion to suppress before jury selection, the trial court responded that it did not have a precise independent recollection of the testimony. The trial judge said he wanted the testimony transcribed, and he would review the transcribed testimony before making a ruling on the motion to suppress.
At a later hearing, the trial court orally announced its ruling suppressing Mallory's statements. The court also addressed whether Mallory had intelligently waived his Miranda rights, stating:
I agree with counsel ... that really is notis not the issue. That upon his being Mirandized, he agreed to talk. But talking and taking a test are somewhat distinguishable.
The trial court also stated the following reasons for suppressing the statements: (1) Mallory had not been adequately advised of the nature of the test nor fully apprised of the purpose of the test, its scientific reliability or use as an investigative tool, and therefore his consent to take the test was not knowingly and intelligently given; (2) the statement to Mallory that the officer would make it known to the court that Mallory had cooperated could have been interpreted by Mallory as a promise and that it would be to his benefit to take the test, which was inappropriate; and (3) it would be a better procedure for investigating officers to tape the entire interview not just record the confession.
Thereafter, the trial court entered a written order granting the motion to suppress. The first two grounds in the order were the same as the first two grounds the trial court had orally announcedthat Mallory had not been adequately apprised of the nature and purpose of the CVSA test and that the officer had inappropriately told Mallory he would make it known to the court Mallory had cooperated. The third ground was different and provided:
The court cannot conclude that the statement was freely and voluntarily made nor can the court conclude that there was a knowing and intelligent waiver and exercise of his right to not incriminate himself considering the totality of the circumstances.
On appeal, Mallory virtually concedes that the first two grounds recited by the trial *106 court are insufficient to invalidate an otherwise voluntary confession.[3] However, Mallory urges us to affirm, nevertheless, because under the "totality of circumstances" test of Thompson v. State, 548 So.2d 198, 204 (Fla. 1989), set forth by the trial court in the third ground of its written order, his statements were not the product of his own free will. Moreover, he says he did not truly understand the circumstances surrounding the waiver of rights and the jeopardy into which he was placing himself.

Standard of Review
The state first argues that this court should engage in a de novo review because the trial court based its decision on a transcription of the testimony, and this court is in as good a position as the trial court to evaluate the transcribed testimony. The state contends that when the trial court's invalid reasons are eliminated no other evidence supports suppression. As part of its de novo review, the state urges this court to disregard any reliance upon Mallory's claim that he took the CVSA because Vancil told him, if he cooperated, he would be released from jail in time for his son's birthday, because this testimony is not corroborated and contradicts the officer's testimony that no promises were made.
It is the state's burden to show by a preponderance of the evidence that the confession was freely and voluntarily given and that the rights of the accused were knowingly and intelligently waived. Thompson v. State, 548 So.2d at 204. The trial court's decision on these two points will not be disturbed on appeal unless clearly erroneous. However, this standard does not apply with full force in those instances in which the determination turns in whole or in part, not upon live testimony, but on the meaning of transcripts, depositions or other documents reviewed by the trial court, which are presented in essentially the same form to the appellate court. Id. at n. 5; State v. Crosby, 599 So.2d 138, 141 (Fla. 5th DCA 1992).
We decline to accept the state's invitation to engage in a de novo review, however, because below the trial court did not base its factual decisions in whole or in part on information available solely by way of a transcript, recording or other documents. Instead, the trial court heard the live testimony of all of the witnesses and had the ability to judge their credibility and demeanor, something this court does not have the opportunity to do. The transcript here served to refresh the trial court's recollection of the live testimony. For this reason, this case is distinguishable from Crosby, in which the trial court based its determination in substantial part on an audio recording of the defendant's confession that was also available to the appellate court.

Validity of Waiver and Confession
In determining the validity of the waiver of Miranda rights, the court should examine (1) whether the waiver was the free uncoerced choice of the defendant and not the product of intimidation, coercion or deception, and (2) whether Mallory waived his Miranda rights with a full awareness of the nature of the rights being abandoned and the consequences of their abandonment. State v. Manning, 506 So.2d at 1096. These determinations are made by considering the totality of the circumstances. Id.
In judging the first consideration, coercive police misconduct is an essential element before the waiver will be found involuntary. An officer's indication that the defendant would benefit from cooperation is not sufficient to constitute coercion of the waiver. Id. at 1097. In judging the second consideration, mere misstatements of fact by the police or withholding of information by police does not mean a waiver was not knowingly and intelligently made, unless the misstatements or silence affect the defendant's ability to understand the nature of those rights he waived and the consequences of abandoning them. Id. A defendant is not required to be provided with all information that "might" affect his decision to confess and police do *107 not have to supply a defendant "with a flow of information to help him calibrate his self interest in deciding whether to speak or stand by his rights." Moran v. Burbine, 475 U.S. 412, 422, 106 S.Ct. 1135, 1142, 89 L.Ed.2d 410, 421 (1986).
Similarly, the voluntariness of the confession is judged by the totality of circumstances. Thompson v. State, 548 So.2d at 204. As stated in State v. Manning, 506 So.2d at 1097-1098:
The use of tricks or factual misstatements in and of itself does not render a confession involuntary. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684, 693 (1969).... There must be coercion involved, and a misstatement of fact is not coercion. [Citations omitted.]
* * *
Florida's view of misstatements of fact by the police is in accord with federal law. Courts have distinguished between police misstatements which delude a defendant as to the import of his confession, Thomas v. State, 456 So.2d 454 (Fla.1984), and are thus improper, and police misstatements of relevant facts, which can be proper, Denmark v. State, 95 Fla. 757, 116 So. 757 (1928).
* * *
A confession obtained by a misstatement of fact is admissible as long as it is voluntarily made. `It is fear of material or physical harm, or hope of material reward, which renders a confession inadmissible.... A confession voluntarily made, but procured by artifice, falsehood or deception, is admissible.' Grant v. State, 171 So.2d 361, 363 n. 1 (Fla.1965) (quoting Denmark, 95 Fla. at 762, 116 So. at 759), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966).
The fact that an officer agrees to make one's cooperation known to prosecuting authorities and to the court does not render a confession involuntary. Maqueira v. State, 588 So.2d at 223. In the event valid Miranda warnings are given, and physical coercion is absent, a confession is admissible despite the use of fabricated incriminating evidence by police, a pretend polygraph test, and the false statement that a defendant failed the pretend test. Burch v. State, 343 So.2d at 833.
Turning to the trial court's order, it appears that the trial court misunderstood the inquiry which should be made to determine the voluntariness of the confession. Neither of the first two reasons advanced by the trial court, standing alone, is sufficient to invalidate the confession. Upon remand, the trial court should determine whether the conduct of the police coerced Mallory to confess or caused his freewill to be overborne. Regarding the validity of the waiver of Miranda rights, we note the trial court orally announced that the validity of the waiver of Miranda rights was not an issue in this case, yet the trial court apparently changed its mind and included the invalid waiver of Miranda rights in its written order as a reason for suppressing Mallory's statements. Upon remand, the trial court should reconsider this issue in light of the above analysis.
We decline to search the record for other reasons to support affirmance, as urged by Mallory, because we are uncertain of the effect that the invalid reasons had on the trial court's overall decision to suppress Mallory's statements. Further, we cannot discern whether, even absent these invalid reasons, the trial court would have nevertheless suppressed Mallory's statements. In short, it is our view that this case should be remanded to the trial court, to provide the court an opportunity to reevaluate the evidence, without consideration of the invalid reasons given, and determine anew if suppression is warranted.
REVERSED and REMANDED with directions.
WOLF and BENTON, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The CVSA test is performed by asking a person a series of questions and analyzing the stress in the test-taker's voice when giving responses. The stress in the voice is measured by the AM and FM frequencies in the person's voice. According to testimony in the record, if a person is not telling the truth, the FM frequency in the voice dissipates causing a blocking pattern.
[3] Maqueira v. State, 588 So.2d 221, 223 (Fla. 1991), cert. denied, 504 U.S. 918, 112 S.Ct. 1961, 118 L.Ed.2d 563 (Fla.1992); State v. Manning, 506 So.2d 1094, 1098 (Fla. 3d DCA 1987); Burch v. State, 343 So.2d 831, 832 (Fla.1977).