NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JEFFERY WATERMAN,                       )
                                        )
           Appellant,                   )
                                        )
v.                                      )        Case No. 2D16-4423
                                        )
STATE OF FLORIDA,                       )
                                        )
           Appellee.                    )
_____ )

Opinion filed September 26, 2018.

Appeal from the Circuit Court for Polk
County; Kelly P. Butz, Judge.

Jason T. Forman of Law Offices of Jason T.
Forman, P.A., Fort Lauderdale, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellee.


KHOUZAM, Judge.

          Jeffery Waterman appeals his judgment and sentences for sexual battery

and lewd molestation upon a child less than twelve years of age.  Though Waterman

raises four issues on appeal, we find merit in only one.  Because Waterman was not

competent to knowingly and intelligently waive his Miranda[1] rights at the time of his confession to law enforcement, we conclude that the trial court erred in denying his motion to suppress. Accordingly, we reverse his convictions and sentences and remand for a new trial.

Waterman, who was eighteen years old at the time of his arrest, was charged with one count of capital sexual battery and one count of lewd or lascivious molestation. Sergeant Darlene Rivas and another deputy of the Polk County Sheriff's Office brought Waterman into an interview room at the police station, where Sergeant Rivas read Waterman his Miranda rights. Waterman indicated that he understood each of his rights and signed a waiver form.

During the interrogation, Waterman was upset and initially denied committing the crimes. He asked the other deputy to leave the room because he felt uncomfortable with a uniformed officer being present. When confronted with the victim's allegations, Waterman started to cry and asked for his "mommy." Waterman stated that his mother would have the answers to Sergeant Rivas' questions. Upon observing Waterman's emotional state, Sergeant Rivas left the interview room to allow Waterman time to collect himself. After some time had elapsed, Sergeant Rivas returned to the room and continued questioning Waterman, who then confessed to committing the crimes and agreed to give a recorded statement. During the recorded statement, Waterman again denied committing the crimes. However, upon further questioning, Waterman confessed to the crimes.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Following his confession, Waterman underwent several competency evaluations by four licensed psychologists between August of 2006 and July of 2007. All four doctors diagnosed Waterman with "mild mental retardation" and concluded that he was not competent to proceed.[2] Indeed, they discovered that Waterman had been a special education student since kindergarten, had a low IQ, possessed a third-or fourth-grade reading and comprehension level, was susceptible to suggestability, and was not malingering. Three of those doctors, Henry Dee, William Kremper, and Joel Freid, further examined Waterman to determine whether he was capable of understanding his Miranda rights. They ultimately opined in written evaluations that were filed with the trial court that Waterman was most likely unable to understand his rights. Consequently, in 2009, the trial court dismissed without prejudice the charges against Waterman, finding that he was "incompetent to proceed due to mental retardation" and that there was "no reasonable likelihood that Mr. Waterman will ever become competent to proceed."

In 2013, the State refiled the charges against Waterman. The trial court ordered two new competency evaluations. Dr. Suzanne Lavelle and Dr. Cecilia Yocum conducted the tests. Though both doctors again concluded that Waterman was incompetent to proceed due to his intellectual disability, Dr. Yocum opined that Waterman could be found competent to proceed to trial after three to six months of competency training. After receiving such training, Waterman underwent another

---

[2]While we are aware and sensitive to the fact that the Florida Legislature substituted the term "intellectual disability" for the term "mental retardation" throughout the statutes of Florida in 2013, see ch. 2013-162, Laws of Fla., this opinion still uses the term "mental retardation" because this was the term actually used by the doctors in their evaluations of Waterman. It was also the generally accepted medical term used at the time of Waterman's evaluations.

competency evaluation by Dr. William Prather and was ultimately deemed competent to proceed. However, these three doctors did not evaluate Waterman for the purpose of determining whether he was capable of understanding his Miranda rights.

Waterman's counsel subsequently filed a motion to suppress his statements to law enforcement, arguing in part that he did not knowingly and intelligently waive his Miranda rights. The trial court held an evidentiary hearing on the motion where it received Waterman's prior evaluations and heard testimony from four witnesses, including Sergeant Rivas and Dr. Gregory DeClue. Like his predecessors, Dr. DeClue, who had evaluated Waterman in 2015, opined that Waterman "would not have been able to understand the warnings in the form that they were given to him." Dr. DeClue's findings were nearly identical to the earlier doctors' written findings in 2006 and 2007. He also found that the Miranda warnings were administered at a seventh-grade level.

The trial court, however, denied the motion. It concluded that the State proved by a preponderance of the evidence that Waterman's waiver was knowing, intelligent, and voluntary. Specifically, in its "conclusions of law," the trial court ruled that though it was "clear" that Waterman "had ongoing competency issues," Dr. DeClue's 2015 evaluation "and the competency issues that occurred subsequent to [Waterman's] arrest[] provide[d] limited guidance in determining" the nature of Waterman's waiver at the time of his arrest in May of 2006. The trial court also based its denial on the following facts: (1) Waterman acknowledged that he understood each of his rights, (2) Waterman was responsive to the questions, and (3) Waterman asked one of the uniformed deputies to leave the interrogation room without any prompting.

- 4 -

Following the denial of his motion, Waterman proceeded to trial. During closing arguments, the State emphasized Waterman's confession to the jury on multiple occasions. The jury found Waterman guilty on both counts, and he was subsequently sentenced to life in prison. On appeal, Waterman contends that the trial court erred in denying his suppression motion because the State failed to prove by a preponderance of the evidence that he knowingly and intelligently waived his Miranda rights. In response, the State argues that we should affirm the trial court's ruling even though "it remains uncertain whether . . . Waterman's waiver of his Miranda rights in May of 2006 was knowingly, voluntarily, and intelligently made."

In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's findings of fact that are supported by competent substantial evidence, but we review de novo the trial court's application of the law to the facts. Young v. State, 207 So. 3d 267, 269 (Fla. 2d DCA 2016) (citing Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003)). "Whether under those . . . facts a Miranda waiver is knowing, voluntary, and intelligent is a question of law that we independently review de novo." State v. Herrera, 201 So. 3d 192, 196 (Fla. 2d DCA 2016) (citing Thomas v. State, 894 So. 2d 126, 136 (Fla. 2004)).

"A defendant's waiver of Miranda rights is valid only when 'made voluntarily, knowingly and intelligently.' " Herrera, 201 So. 3d at 196 (quoting Miranda, 384 U.S. at 444). To be a voluntary, knowing, and intelligent waiver, the waiver must be (1) " 'voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception,' and (2) it must be 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision

- 5 -

to abandon it.' " Id. (quoting Ramirez v. State, 739 So. 2d 568, 575 (Fla. 1999)). Determining whether these two elements have been satisfied "depends on the totality of the circumstances, an analysis that requires examination of 'all the circumstances surrounding the interrogation.' " Id. (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)). The State has the burden to show by a preponderance of the evidence that under the totality of the circumstances the defendant knowingly, voluntarily, and intelligently waived his Miranda rights. Herrera, 201 So. 3d at 196 (citing Colorado v. Connelly, 479 U.S. 157, 167-68 (1986)).

The defendant's intellectual disability is one factor the court should consider in the totality of the circumstances. Thompson v. State, 548 So. 2d 198, 203 (Fla. 1989). And though an intellectual disability alone does not render a confession involuntary, it may render a confession involuntary in those "rare cases" where the disability is "so severe as to render the defendant unable to communicate intelligibly or understand the meaning of Miranda warnings even when presented in simplified form." Id.; see also State v. Crosby, 599 So. 2d 138, 142 (Fla. 5th DCA 1992) (noting that expert testimony may establish that a defendant's intellectual limitations "were severe enough to make him incapable of understanding his rights"). The court should also consider other factors, including "mental capacity or I.Q., age, physical condition, demeanor, coherence, articulateness, capacity to make full use of one's faculties, memory, level of education, level of reading skill, time of interrogation, prior record or experience with the criminal justice system." Crosby, 599 So. 2d at 142; see also Benitez v. State, 952 So. 2d 1275, 1277 (Fla. 2d DCA 2007) (listing similar factors, including the "(1) the manner in which the Miranda rights were given, including any

trickery or cajoling; (2) the defendant's age, intelligence, background, and experience; (3) whether the juvenile's parents were contacted and given an opportunity to speak with him before questioning; (4) the location of the questioning; and (5) whether police obtained a written waiver of the Miranda rights").

Here, the trial court erred in denying Waterman's suppression motion because its conclusions of law were not supported by the record. The trial court erroneously concluded that because Dr. DeClue's evaluation occurred in 2015 and Waterman's "competency issues" occurred after his arrest, there was "limited guidance" in determining the nature of Waterman's waiver at the time of his arrest. Such a finding is simply unsupported by the record. A review of the record shows there was ample evidence presented that provided clear guidance on the issue of whether Waterman's waiver was knowing and intelligent at the time of his arrest. Indeed, even if the trial court completely discounted Dr. DeClue's testimony that Waterman "would not have been able to understand the warnings in the form that they were given to him," the trial court failed to consider the other competency evaluations in the record.

In particular, the trial court overlooked the fact that Dr. Dee, Dr. Freid, and Dr. Kremper all evaluated Waterman within thirteen months of his arrest, each concluding that Waterman was most likely not able to understand his rights at the time of his arrest. Dr. Dee, who evaluated Waterman only three months after his arrest, opined that Waterman "clearly . . . d[id] not understand [the Miranda Warnings]" at the time of both his interrogation and evaluation. He also had "the impression that [Waterman] does not now and probably never has understood Miranda Warnings." In fact, when Dr. Dee read Waterman his rights and asked Waterman to explain in his own

words what the right to remain silent meant, Waterman responded incorrectly, "You have to be quiet until the person says to talk."

In 2007, Dr. Freid and Dr. Kremper made similar observations in their evaluations of Waterman. Dr. Freid opined that because "Mr. Waterman does not understand his Miranda rights," he was "very likely not competent to waive Miranda at the time of interrogation." Likewise, Dr. Kremper concluded that "Waterman was not considered to have the capacity to knowingly, intelligently and voluntarily waive Miranda" because Waterman (1) was functioning in "the mild range of mental retardation"; (2) did not understand the meaning of key words found in the warnings, such as "right," "afford," and "appointed"; and (3) had a "limited ability to understand the longer term consequences of his actions and statements." These evaluations were unrefuted. Thus, the trial court erred in concluding that there was "limited guidance" regarding Waterman's ability to comprehend his rights at the time of the interrogation.

Furthermore, the trial court erred in denying the suppression motion based on Waterman's responsiveness to the questions and acknowledgement that he understood his rights. While we recognize that an accused's responsiveness is an appropriate factor for the trial court to consider in reaching its determination, mere acknowledgement that one understands his or her rights is not sufficient to show comprehension of those rights. See B.M.B. v. State, 927 So. 2d 219, 223 (Fla. 2d DCA 2006) (holding that even though juvenile acknowledged to law enforcement that she understood her Miranda rights, such acknowledgement without any evidence that she "clearly understood [her] rights and their significance" was insufficient to show that she

- 8 -

had validly waived her rights). Nor does asking a uniformed officer to leave the interview room indicate that Waterman comprehended and validly waived his rights.

Waterman was eighteen years old at the time of the interrogation and had no prior criminal experience with law enforcement. He was crying and asking for his "mommy." He was a special education student since kindergarten, had a very low IQ that placed him in the "mild mental retardation" range, read at a third or fourth-grade level, and was susceptible to suggestability. And given the uncontroverted evidence that the Miranda warnings were administered at a seventh-grade reading level and in the police station, we conclude that Waterman did not knowingly and intelligently waive his rights. We further conclude that the error was not harmless beyond a reasonable doubt, especially considering that the prosecutor repeatedly made Waterman's confession a feature of her closing argument. We, therefore, reverse and remand for a new trial.

Reversed.

LUCAS and SALARIO, JJ., Concur.