767 So.2d 595 (2000)
Antoine JEAN-LOUIS, and Desilia Jean-Louis, Appellants,
v.
FORFEITURE OF $203,595.00 IN U.S. CURRENCY, Appellee.
No. 4D99-4309.
District Court of Appeal of Florida, Fourth District.
September 13, 2000.
*596 Joel Kaplan, Miami, for appellants.
Julie Owen, and Jonathan Goodman of Akerman, Senterfitt & Eidson, P.A., Miami, for appellee.
WARNER, C.J.
In this forfeiture proceeding, the trial court denied appellants, Antoine Jean-Louis and his wife Desilia, standing to participate in the adversarial probable cause hearing held pursuant to section 932.703(c) and (d), Florida Statutes (1999), on the ground that appellants had signed a written waiver of standing. Appellants challenge the court's denial of standing, entered without an evidentiary hearing, contending that they had standing both because they had asserted a bona fide claim to the seized money and also because they were persons in possession of the property at the time the property was seized. We reverse for a new probable cause hearing where appellants would be entitled to contest the validity of their waiver.
On September 22, 1999, after a traffic stop and seizure of currency, a notice of seizure for forfeiture was served on appellants by the seizing agency, the City of Coral Gables. Two days later, appellants' attorneys requested a post-seizure adversarial preliminary hearing, and the seizing agency filed a petition for such a hearing. On October 5, 1999, the day of the hearing, the city filed a verified complaint for judgment of forfeiture detailing the grounds for the forfeiture, as is set forth herein.
During a traffic stop along the Florida Turnpike on September 22, 1999, investigators approached appellants' vehicle and informed them that they were conducting a money laundering investigation. Appellants agreed to cooperate and provided oral and written consent to the search of their vehicle. The search revealed a duffel bag containing $203,595 in currency. Appellant Antoine claimed that the money belonged to his business located in Haiti and that he was using the currency to purchase clothes in the United States which he would sell in Haiti and the Dominican Republic. Antoine advised the investigators that it was common practice in Haiti to carry large sums of money for business in one's vehicle. He also admitted to having more cash at his home, as well as cash counting machines. He claimed that he had declared all money brought into the country and that he earned $65,000 a year.
The complaint then alleges that on the same date both appellants signed sworn stipulations for settlement of the forfeiture action, acknowledging that the seized currency was contraband and relinquishing any right to the money. The stipulations were attached to the complaint. These were "fill in the blank" affidavits and stipulations. One states "I, Antoine Jean-Louis certify and attest that I am not the owner of the seized currency." The paper also includes the statement that neither appellant has a possessory interest in the seized currency and that they do not have legal standing to contest the seizure and *597 forfeiture "because I have no ownership claim to the seized currency."
At the first hearing, appellants' attorneys objected to the written stipulation waiving any interest in the currency, because it had just been received, and the attorneys were unaware of it. The hearing was continued, and appellants filed an answer admitting their statements that the money was from their Haitian business. They alleged as an affirmative defense that the stop of their vehicle was illegal. Later, appellant Antoine filed an affidavit in which he again attested that the money was his and explained that it was used in his export business. He also said that he had described this to the police in a sworn statement. He explained that after his sworn statement was completed on the day of the stop:
the police handed me a document which has the title "Affidavit and Stipulation Under the Florida Contraband Forfeiture Act, Florida Statutes XXX-X-X-XXX,705." The police asked me to sign it so they could let me go home. I did not understand what the document said. The police did not explain what the document meant. If they had or if I had understood what this document says and means I would not have signed it.
A transcript of the taped statement was read in part at the hearing, and a copy is part of appellants' appendix. In it, appellant made the same statements about his ownership of the money and its use in his business. The statement was sworn to by appellant and was taken by the detective in charge of the investigation. It recites that the stop was made at about 1:15 p.m. and the statement was made at 4 p.m. An affidavit was also filed by appellant Desilia, in which she swore that she does not read English.
At the rescheduled adversarial hearing for probable cause, the City argued that Salazar v. Forfeiture of 182,289.00 in U.S. Currency, 728 So.2d 276 (Fla. 3d DCA), rev. denied, 740 So.2d 528 (Fla.1999), and Arango v. Forfeiture of Four Hundred Seventy-Seven Thousand Eight Hundred Ninety Dollars ($477,890) in U.S. Currency, 731 So.2d 847 (Fla. 3d DCA 1999), applied. The trial court found, without taking testimony, that the waiver of standing contained in the written stipulation was valid and entered an order determining that appellants had no standing because of the voluntary waivers.
Whether or not a waiver is valid is a question of fact. See Rutig v. Lake Jem Land Co., 155 Fla. 420, 20 So.2d 497, 499 (1945). While a party may waive any rights to which he is legally entitled, where there is doubt as to whether a constitutional right is waived, such doubt should be resolved in favor of the party in whom the right is vested. See Loiselle v. Gladfelter, 160 So.2d 740, 742 (Fla. 3d DCA 1964). In connection with other constitutional rights, the supreme court has developed a test for determining the validity of the waiver of a constitutional right:
[t]o determine if a waiver is valid a court must make two inquiries. First, the court must determine if the waiver was voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979); see also State v. Mallory, 670 So.2d 103, 106 (Fla. 1st DCA 1996). Second, the court must determine whether the waiver was executed with a full awareness of the nature of the rights being abandoned and the consequences of their abandonment. Fare, 442 U.S. at 725, 99 S.Ct. at 2572; Mallory, 670 So.2d at 106. As with determining the voluntariness of a confession, a court must use a totality-of-the-circumstances analysis to determine whether a waiver of Miranda rights meets these criteria and is thus valid. Likewise, the State has the burden of proving the waiver is valid by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168-69, 107 S.Ct. 515, 522-23, 93 L.Ed.2d 473 (1986).
*598 Sliney v. State, 699 So.2d 662, 668 (Fla. 1997), cert. denied, 522 U.S. 1129, 118 S.Ct. 1079, 140 L.Ed.2d 137 (1998). The instant case involves appellants' constitutional right against deprivation of property without due process of law. See Art. I, § 9, Fla. Const.; U.S. Const. amend. V. See also City of Fort Lauderdale v. Baruch, 718 So.2d 843 (Fla. 4th DCA 1998). Therefore, consideration of the validity of the waiver under the totality of circumstances approach outlined in Sliney should be undertaken.
As there was no evidentiary hearing on the validity of the waiver, we remand for a hearing at which this issue would be decided. The facts of this case render significant doubt as to whether the waiver was knowingly and voluntarily made and not a product of deception. Even without considering the affidavits provided by the appellants, an immediate question is raised upon the allegations of the petition for forfeiture wherein the detailed explanation of appellants' ownership and dealings with the seized money is relayed. Yet, moments after giving this sworn statement to the police, appellants sign a waiver in which they state that the money is not theirs and they have no legal standing to contest the forfeiture. They are both sworn statements, and they are completely contradictory. Based upon these statements alone, the court could not have concluded that the written statement was the valid one.
When appellants' affidavits are considered, a case for deception is clearly made. After making a complete statement regarding their ownership and possession of the money, appellants were asked to sign the waiver in order for them to be released. The document was not entitled a waiver but an "Affidavit and Stipulation." It was not explained to them. Appellant Desilia testified by way of her affidavit that she does not even read English. Under these circumstances, the court could not conclude without an evidentiary hearing that appellants had waived all rights they had under the Contraband Forfeiture Statute.
Salazar and Arango are both factually distinguishable from the instant case. In Salazar, the party had signed a statement relinquishing all rights to the property, yet in asserting standing at the preliminary hearing, he simply stated that the property was his, without more. To the contrary, in the instant case appellants offered a detailed explanation of how the money was theirs, where it came from, and what they were using it for. In Arango, the party had signed a written waiver of rights to the seized currency, and later claimed it was his money. The court rejected as incredible his claim that the currency was from his earnings from selling used auto parts, particularly following his statements during seizure that the currency was proceeds from a drug transaction. Here, appellants gave a detailed explanation of where the proceeds came from and how they were being used, and their explanation has been consistent throughout the proceedings.
We reverse and remand for a hearing on the issue of the validity of the waiver. If the waiver is found to be invalid because it was not knowingly and voluntarily given free of deception, appellants have standing in the adversarial preliminary hearing, as at the very least, they were in possession of the money at the time of its seizure. See Baruch, 718 So.2d at 846.
POLEN and GROSS, JJ., concur.