917 So.2d 948 (2005)
Jason FORBES, Father and Laura Forbes, Mother, Appellants,
v.
Mona CHAPIN, Maternal Grandmother, Appellee.
No. 4D05-371.
District Court of Appeal of Florida, Fourth District.
December 21, 2005.
*949 Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach and Charlotte Danciu of Charlotte Danciu, P.A., Delray Beach, for appellant Jason Forbes, Father.
David F. Pleasanton of David Pleasanton, P.A., West Palm Beach, for appellee.
SCOLA, JACQUELINE HOGAN, Associate Judge.
Appellant (natural father, Jason Forbes) appeals on constitutional grounds from two (2) non-final orders entered by the trial court. We reverse and remand for the orders to be vacated.
The first order appealed from denies the father's exceptions to the general master's report. That general master's report found that the trial court's 1998 order granting appellee (maternal grandmother) visitation rights with her minor grandchild was valid and enforceable.
The second order granted a motion for contempt based on the finding of validity of the visitation order from 1998. The validity of the order ostensibly created in the grandmother a right to notice of the petition for adoption. Thus, the father's failure to give the grandmother notice of the stepmother's petition for adoption of the minor child (appellee's grandchild) was found to be contemptuous of the court's visitation order.
The facts relevant to our consideration arose when the father and appellee's daughter, the natural mother of the minor child, divorced in 1997. At that time, the grandmother petitioned for, and the parties agreed to, her having visitation rights. On February 11, 1998, the court entered an agreed order for grandparent visitation, ratifying the agreement. The order provided for one (1) week visitation during the summer and five (5) weekends over the course of the year. Visitation proceeded without incident until 1999. After that *950 time, the parties came to court on several occasions regarding where, when and how the visitation would take place.
On September 10, 1999, the court entered a subsequent order to enforce grandparent visitation. Eventually the father remarried. Several instances of visitation occurred after the remarriage, but the court ultimately found that the father and his new wife thwarted the grandmother's visitation starting in mid-2002.
On March 6, 2003, the natural mother voluntarily consented to the termination of her parental rights and to the stepmother's adoption of the minor child, which was adjudicated on September 18, 2003. The grandmother was not noticed and visitation was withheld.
Upon learning of the adoption, the grandmother filed a motion for contempt against the father based on the lack of notice ostensibly founded on the 1999 visitation order entered by the trial court. The trial court referred the grandmother's motion for contempt to a general master.
The general master found the grandmother to be an interested party and therefore able to enforce her rights under the original visitation order. The general master further found that because the grandmother was an interested party, the father should be held in contempt for failure to notify her of the adoption proceedings. The general master based his findings on a "best interest of the child" standard. The father filed his objections.
The father argued that he was not in contempt because, inter alia, the Florida Constitution's right to privacy clause protected his family's right to privacy and the grandparent visitation order violated such. Further, he argued, he had not waived his right to privacy by signing the agreement in 1998.
On December 21, 2004, the trial court entered two (2) written orders, one entitled "Order Denying Respondent/Father's Exception to the General Master's Report (D.E.# 66)" and the other "Order Granting Petitioner's Motion for Contempt." The order granting contempt includes the court's findings of fact.
In it the court put forth the issue as "whether the case law prohibits the enforcement of the Agreed Order on Petition/Request for Grandparent Visitation." The court further notes that though the original "grandparent visitation hearing was awarded pursuant to Chapter 61 of the Florida Statutes, and not Section 752.01" the court found "no reason to deviate from the principal [sic] set for [sic] in Section 752.07," and stated as follows:
When there is a remarriage of one of the natural parents of a minor child for whom visitation rights may be or may have been granted to a grandparent pursuant to s. 752.01, any subsequent adoption by the stepparent will not terminate any grandparental rights. However, the court may determine that termination of such visitation rights is in the best interest of the child and rule accordingly, after affording the grandparent and [sic] opportunity to be heard.
The court further found that "... there was a close relationship between the [grandmother] and the child," and held that "[i]t cannot be said that is [sic] in the best interest of the child to terminate this relationship."
The court did not use the word waiver but suggested that waiver had occurred in finding:
The adoptive mother was aware of the agreement for visitation, and in fact, the visitation took place after the marriage of the father and the adoptive mother. She was well aware of the visitation being exercised by the maternal grandmother *951 prior to the marriage. The fact that this Agreed Order/Petition on Request for Grandparent Visitation was entered prior to the remarriage without duress or misrepresentations convinces the Court that this valid Order should not be ignored.
The court therein acknowledged the father's reliance on both Beagle v. Beagle, 678 So.2d 1271 (Fla.1996), and Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998), but still applied section 752.07 which relies on 752.01. The court concluded its ruling by stating:
The Court fully notes that the adoption was without notice to the maternal grandmother, notwithstanding the fact that the Order for visitation had already been entered. Clearly, she was an interested party at that point. See In Re: Adoption of a Minor Child, 593 So.2d 185 (Fla.1981)[sic][1].
In the court's second order entitled "Order Denying Respondent/Father's Exception to the General Master's Report (D.E.# 66)," the court ruled that "the question here is one of equity. In this case, the Father entered into a valid contract for grandparent visitation. The stepparent adoption did not change the contract. See Jean-Louis v. Forfeiture of $203,595.00 in U.S. Currency, 767 So.2d 595 (Fla. 4th DCA 2000)."
We address the question of whether a parent's agreement to visitation by a grandparent with the parent's minor child waives the parent's right to later enforce his constitutional privacy right to raise his child free from government intrusion and thus, prevents him from later revoking his agreement for visitation. We answer this question in the negative.
Pursuant to the Florida Constitution, article I, section 23, the Supreme Court of Florida has found that natural parents have a fundamental right to privacy in rearing their children. Beagle, 678 So.2d at 1275. "Neither the legislature nor the courts may properly intervene in parental decision-making absent significant harm to the child threatened by or resulting from those decisions." Von Eiff, 720 So.2d at 514 (Fla.1998) (citing Beagle, 678 So.2d at 1275). The trial court here not only relied on Florida Statutes in holding against the parent, but also held that there was a knowing waiver of a constitutional right.
There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional abandonment of a known right. See Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). And, "where there is doubt as to whether a constitutional right is waived, such doubt should be resolved in favor of the party in whom the right is vested." Jean-Louis, 767 So.2d at 597. In the case at hand, there is no clear establishment that the father waived his constitutional right. Thus, any doubt about whether he wished to relinquish this right is resolved in his favor.
Florida courts have held statutory provisions granting grandparents rights to be violative of a parent's right to privacy to raise his or her children free of governmental intrusion, absent a requirement that a compelling state interest in preventing a demonstrable harm to the child be shown. The Court in Von Eiff declared section 752.01(1)(a) facially unconstitutional because it does not "require a showing of demonstrable harm to the child before *952 the State's intrusion upon the parent's fundamental rights." 720 So.2d at 514.
In this case, the Court had no basis for finding a demonstrable harm and there is no such claim. The court found only that a continued relationship between the minor child and the grandmother through visitation was in the child's best interest.
Around the time that the instant case was being litigated, the Supreme Court of Florida held in Sullivan v. Sapp, 866 So.2d 28 (Fla.2004), that section 61.13(2)(b)(2)(c), Florida Statutes (2001), is unconstitutional as violative of Florida's right to privacy because it failed to require a showing of the essential element of harm to the child prior to compelling grandparent visitation and overriding the parental privacy rights. Id. at 37-38. That statute stated that a court "may award the grandparents visitation rights with a minor child if it is in the child's best interest." § 61.13(2)(b)(2)(c), Fla. Stat. (2001).
In Sullivan, the supreme court reiterated the reasoning and authority of the holdings in Beagle, Von Eiff, and Brunetti v. Saul, 724 So.2d 142 (Fla. 4th DCA 1998). Those cases make it clear that natural parents have a constitutional right of privacy to raise their children as they see fit short of the existence of a compelling state interest to justify the violation of a parent's fundamental right to raise his or her child.
Though the trial court here did not cite to this court's decision in Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998), it may well have been familiar with that decision, which is similar to the instant case. In Spence, this court decided the case in favor of grandparent visitation relying on section 61.13(2)(b)(2)(c). In that case, this court concluded that there was a waiver of familial privacy by bringing the issue of grandparent visitation to the court. That case has now been called an anomaly by the supreme court, Sullivan, 866 So.2d at 38. Moreover, the very statute, section 61.13(2)(b)(2)(c), found constitutional by this court in Spence, was declared unconstitutional in Sullivan. Further, the supreme court in Sullivan disapproved the holding in Spence, and found that a father in a paternity suit retains the same right to privacy as any other father and that the right is not abandoned by bringing it to court. Sullivan, 866 So.2d at 38.
In Sullivan, the supreme court cited with approval Lonon v. Ferrell, 739 So.2d 650 (Fla. 2d DCA 1999). In that case, the adoptive stepfather objected to grandparent visitation by the biological father's parents. The Second District found section 752.01(1)(b) to be unconstitutional, disagreeing with Spence. Lonon agreed with S.G. v. C.S.G., 726 So.2d 806, 811 (Fla. 1st DCA 1999), which "rejected the reasoning in Spence that the constitutional privacy right did not apply when parents had abandoned the right by bringing their dispute before the court." Lonon, 739 So.2d at 652.
Finally, the supreme court in Sullivan explained that "every statute considered by this Court involving visitation or custody of a child by a grandparent has been deemed unconstitutional because none included harm to the child as the required standard; the best interest of the child standard is not sufficient." 866 So.2d at 38 (emphasis added).
The Court also stated "[c]learly, this Court has consistently held all statutes that have attempted to compel visitation or custody with a grandparent based solely on the best interest of the child standard, without the required showing of harm to the child, to be unconstitutional." Id. at 37.
While the remaining provisions of section 752.01(1), namely subsections (b) *953 and (c), have not expressly been declared unconstitutional by this Court, this Court did hold that a trial court order, which granted a grandmother visitation pursuant to 752.01(1)(b), "directly contravenes the [mother's] right to privacy and decision-making in rearing her child."
Id. (quoting Belair v. Drew, 770 So.2d 1164, 1167 (Fla.2000)).
Upon remand in Belair, the Fifth District expressly held that 752.01(1)(b) "fails to survive the compelling state interest test required by Beagle and is facially unconstitutional as it impermissibly infringes on privacy rights protected by Article I, section 23 of the Florida Constitution." Belair v. Drew, 776 So.2d 1105, 1107 (Fla. 5th DCA 2001); see also Lonon, 739 So.2d at 653.
The trial court in the present case relied on section 752.07 in determining that the relationship previously agreed to by the parties should continue over the natural parent's objection. This statute is unconstitutional. Do equitable principles overcome that fact? And should an order of contempt lie for failure to comply with notice provisions which are unconstitutional? We also answer these questions in the negative.
"With regard to a non-parent, visitation rights are only statutory and a court has no inherent authority to award visitation." Williams v. Spears, 719 So.2d 1236, 1239 (Fla. 1st DCA 1998). Thus, in the absence of a constitutional statute upon which the court could base its order, the court may not order such visitation in favor of a non-parent.
Finally, because the court's granting of visitation rights to a non-parent over the parent's objection is an unenforceable order, the finding that the grandmother is an interested party is in error. Thus, the grandmother had no right to notice of the adoption proceedings. For that reason, the order of contempt cannot lie and should be vacated.
We are convinced, and so conclude, that the father did not waive his constitutional privacy rights by entering into the original agreed order for grandparent visitation rights. We find that any right the grandmother may have had under the order did not survive the stepparent's adoption based on the right to privacy guaranteed by article I, section 23 of the Florida Constitution, and pursuant to the holding in Sullivan. Therefore, the order of contempt cannot lie and the order on visitation should be vacated forthwith.
Reversed and Remanded.
STONE and GROSS, JJ., concur.
NOTES
[1] In re: Adoption of a Minor Child, 593 So.2d 185 (Fla.1991).