985 So.2d 978 (2008)
G.S., et al., Petitioners,
v.
T.B., et al., Respondents.
No. SC07-2370.
Supreme Court of Florida.
May 22, 2008.
Rehearing Denied June 30, 2008.
*979 Bryan Scott Gowdy and John Stewart Mills of Mills and Creed, P.A., Jacksonville, FL, for Petitioner.
William S. Graessle of William S. Graessle, P.A., Jacksonville, FL, for Respondent.
Michael Ufferman, Tallahassee, FL, and Alan Isaac Mishael, Miami, FL, on behalf of The Florida Adoption Council, as Amicus Curiae.
WELLS, J.
This case is before the Court for review of the decision of the First District Court of Appeal in G.S. v. T.B., 969 So.2d 1049 (Fla. 1st DCA 2007). In its decision, the district court ruled upon the following question, which the court certified to be of great public importance:
DOES A TRIAL COURT ABUSE ITS DISCRETION GRANTED BY CHAPTER 63, FLORIDA STATUTES, WHEN IT DENIES AN ADOPTION PETITION FILED BY THE ORPHANED CHILD'S MATERNAL GRANDPARENTS, WHO ARE DEEMED TO BE FIT PROSPECTIVE PARENTS, BASED ON THE COURT'S DETERMINATION THAT DENYING THE PETITION IS IN THE CHILD'S BEST INTEREST FOR ENSURING THE PATERNAL GRANDPARENTS' INVOLVEMENT IN THE CHILD'S LIFE?
Id. at 1054 (on motion to certify questions of great public importance). We have jurisdiction. *980 See art. V, § 3(b)(4), Fla. Const.

FACTS
This case concerns the denial of an adoption of two minor children: I.S. and C.S. (hereinafter "the children"). Both of the children's natural parents are deceased. The children's mother died shortly after C.S. was born. Following the mother's death, the children stayed much of the time in the home of the maternal grandfather and his wife. This lasted for approximately four months until the father was able to arrange for a suitable daycare. Thereafter, the father died in an automobile accident. At the time of the father's death, the children were ages two years and one year. Upon the father's death, the children immediately moved into the maternal grandfather's home, where he and his wife provided the children's primary care. During this period, the children's paternal grandmother and her husband stayed in regular contact with the children and visited with the children primarily at the maternal grandfather's home.
Soon after the father's death, the maternal grandfather and his wife filed a petition for adoption. On the day following the filing of the adoption petition, the paternal grandmother filed a petition to have the court appoint her as guardian of the children. The paternal grandmother asserted that, under the circumstances, guardianship was preferable to adoption because the court would retain jurisdiction over the guardian and could ensure that the children would maintain a relationship with both the maternal and paternal grandparents and could ensure that the children's best interests were served. The trial court consolidated the adoption and the guardianship cases, ordered the parties to mediation, and later appointed a child custody evaluator.
The paternal grandmother filed a motion to set specific visitation or placement of the children with her, alleging that the maternal grandfather had physically taken control of the children without any legal authority; petitioned for adoption in an attempt to cut off her right to see the children; and frustrated her attempts in arranging visitation, outright refusing any contact between the children and the paternal grandmother during the holidays. In response to this motion, the court granted visitation rights to the paternal grandmother, setting forth explicit dates and times when she could have visitation with the children.
The trial judge expressed a favorable impression of both the maternal and paternal grandparents, finding they were "fit and appropriate parties to serve as primary caregivers for these children." The court further found from the evidence that it was the wish of the children's father that in the event of his death, the children should be raised by the maternal grandfather and his wife.
During the hearing, the focus of the paternal grandmother's argument against adoption and in favor of guardianship was the contention that visitation with the children should be legally secured. She asserted that if the adoption was granted, her ability to see her grandchildren would be entirely at the discretion of the maternal grandfather. The issue of visitation by the paternal grandparents was also a major concern to the trial judge. The judge emphasized that he was struggling with the decision in this case because involvement with both sets of grandparents would be beneficial to the children, and he was concerned as to how to ensure continued visitation with the children's paternal grandparents if the adoption was granted:
[THE COURT:] However, in light of what took place, I think it was the preference *981 of ... the father of the children, that [the maternal grandfather and his wife] raise these children primarily. So the Court desires the children being raised in their household which they've basically been in now for about two and a half years since their mother died.
I'm cognizant of the other issues that we're all concerned with so give me a solution that takes care of the position. Put your brains to work. Otherwise, I'm going to have to just do an adoption and hope for the best.
MR. THOMPSON: Do an adoption? So you're leaning towards an adoption, I guess.
THE COURT: I'm leaningno. Whether you call it a guardianship or not, the kids are not going to know. They're not going to know the difference. They're just going to be living in a place, and they're going to be
MR. THOMPSON: Sure.
THE COURT: So I'm trying to keep the children in the home which I think is the preference of their father in this case. It was his intention after the mom died and that they pretty much have had the hands-on raising these children for the last two years, but I want the assurance thatnot only [the paternal grandmother], but [the paternal grandfather] as well that there will still be a relationship, an ongoing relationship with all, you know, all the blood relatives, primarily [the paternal grandparents].
The only way I can do that is if you work out maybe they're guardians of the property and da, da, da, da, da, or he does some affidavit that consents to that portion of the adoption knowing full well their rights and they're willing to waive it and permit these other parties under these unique circumstances and blah, blah, blah.
After the hearing, the trial court issued an order holding that it was in the children's best interests to "enjoy the love, affection and involvement of all of their grandparents in their lives, no matter who maintains their primary residence." In re Adoption of I.S. & C.S., No. 16-2005-DR-2737-FM (Fla. 4th Cir. Ct. order filed Sept. 15, 2006) at 2. The court denied the petition for adoption of the maternal grandfather and his wife and denied in part the paternal grandmother's petition for guardianship. The judge ordered that the children remain in the primary care and custody of the maternal grandfather and his wife. The maternal grandfather's wife was appointed as the guardian of the person of the children. The paternal grandmother and her husband were appointed as guardians of the property for the children and were permitted to have liberal and frequent visitation with them.
The maternal grandfather and his wife appealed, asserting that the trial court erred in denying a petition for adoption despite the fact that the court determined that they were fit and proper persons to raise the children. The First District affirmed the trial court's decision in a split decision, with Judge Thomas dissenting. On rehearing, the court certified the question which we now answer.

ANSWER TO CERTIFIED QUESTION
We answer the certified question in the affirmative. We conclude that a trial court abuses its discretion in denying an adoption petition when, following an evidentiary hearing, the trial court determines that the petitioning prospective adoptive parents are fit adoptive parents but denies the adoption despite this finding because it determines that it is in the child's best interests for ensuring the paternal grandparents' involvement in the child's life. We find that this answer is consistent with *982 what the Legislature has recognized to be the State's compelling interest in providing stable and permanent homes for adoptive children, as expressed in section 63.022(1)(a), Florida Statutes (2005), and to enforce the child's statutory right to permanence and stability in adoptive placements as set forth in section 63.022(1)(c), Florida Statutes (2005).

STANDARD OF REVIEW
The statutes and case law of Florida recognize that it is the court's primary duty to grant an adoption only when it is in the best interests of the child. See In re Adoption of H.Y.T., 458 So.2d 1127, 1128 (Fla.1984) ("In adoption proceedings, ... the court's primary duty is to serve the best interests of the child the object of the proceeding."). In reviewing a trial court's finding as to whether an adoption serves the best interests of the child, an appellate court is governed by the abuse-of-discretion standard. See In re K.C., 633 So.2d 104, 104 (Fla. 2d DCA 1994) (applying the abuse-of-discretion standard in determining whether parental rights should be terminated for subsequent adoption); In re L.N.S., 546 So.2d 808, 808 (Fla. 4th DCA 1989) (holding that the trial court did not abuse its discretion by finding that the child was abandoned and that adoption was in the best interests of the child); V. v. State Dep't of Health & Rehab. Servs., 427 So.2d 1082, 1083 (Fla. 1st DCA 1983) (holding that the trial court did not abuse its discretion in finding that it would be manifestly in the children's best interests to grant permanent custody to the foster parents). However, a trial court's determination regarding a child's best interests is not without bounds. The trial court must follow the Legislature's guidance which sets forth the parameters of adoption. An appellate court will review de novo whether the trial court's determinations are based on a proper interpretation of the law. See Dep't of Children & Family Servs. v. P.S., 932 So.2d 1195, 1198 (Fla. 1st DCA 2006) ("We have de novo review of issues involving the interpretation of statutes.").

ANALYSIS
Adoption was unknown in common law and exists solely by virtue of statute. See In re Palmer's Adoption, 129 Fla. 630, 176 So. 537, 538 (1937); Harden v. Thomas, 329 So.2d 389, 390 (Fla. 1st DCA 1976). Accordingly, the trial court's determination on adoption must be grounded in the provisions of chapter 63, Florida Statutes, the "Florida Adoption Act." In section 63.022, as we stated earlier, the Legislature declared the State's "compelling interest" in adoptions, and it further made legislative findings and stated its intent in respect to adoptions:
(1) The Legislature finds that:
(a) The state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner, in preventing the disruption of adoptive placements, and in holding parents accountable for meeting the needs of children.
(b) An unmarried mother faced with the responsibility of making crucial decisions about the future of a newborn child is entitled to privacy, has the right to make timely and appropriate decisions regarding her future and the future of the child, and is entitled to assurance regarding an adoptive placement.
(c) Adoptive children have the right to permanence and stability in adoptive placements.

(d) Adoptive parents have a constitutional privacy interest in retaining custody of a legally adopted child.

*983 (e) An unmarried biological father has an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood, both during the pregnancy and after the child's birth. The state has a compelling interest in requiring an unmarried biological father to demonstrate that commitment by providing appropriate medical care and financial support and by establishing legal paternity rights in accordance with the requirements of this chapter.
(2) It is the intent of the Legislature that in every adoption, the best interest of the child should govern and be of foremost concern in the court's determination. The court shall make a specific finding as to the best interest of the child in accordance with the provisions of this chapter.
(3) It is the intent of the Legislature to protect and promote the well-being of persons being adopted and their birth and adoptive parents and to provide to all children who can benefit by it a permanent family life, and, whenever appropriate, to maintain sibling groups.
§ 63.022(1)-(3), Fla. Stat. (2005) (emphasis added). Based upon these provisions, it is clear that the Legislature favors adoptions of legally free minor children as the preferred method for providing minor children with the benefits of a stable and permanent family life because, as observed by the Fourth District Court of Appeal in C.M. v. Department of Children & Family Services, 854 So.2d 777, 779 (Fla. 4th DCA 2003), the Legislature recognized that "stability for children is ... important to both their physical and mental well-being."
Since the statutory mandate is for adoption of legally free minor children, the issue before a trial judge when presented with a petition for the adoption of legally free minor children is whether adoption of the children by the petitioners is in the best interests of the adoptive children. The focal issue is the fitness and appropriateness of the petitioners as adopting parents and whether creating the adoptive family composed of the petitioners and the children is in the children's best interests. The issue is not whether the children should or should not be adopted or should live with the petitioners in some other form of custody such as guardianship. That decision has been made by the Legislature in favor of adoption over guardianship when adoption is available and serves the children's best interests.
We find that it is not in accord with the statutory scheme for the decision as to whether adoption by a petitioner is in the best interests of the child to be based upon the issue of whether a grandparent who is not petitioning for adoption will have continuing involvement with the child through visitation. Rather, as earlier stated, the petition for adoption should be determined on the basis of the fitness of a petitioner who is petitioning to adopt the child and whether the adoptive home that would be provided for the child by that petitioner is suitable for the child so that the child can grow up in a stable, permanent, and loving environment. It is within those criteria that the determination as to the best interests of the child is to be made with regard to an adoption petition.

THIS CASE
We appreciate the diligence with which the trial judge heard this case and tried to work out a solution to accommodate both grandparents in the tragic circumstances of the deaths of the children's parents. However, in accord with our answer to the certified question, we conclude that the trial judge erred as a matter of *984 law in denying the petition for adoption. Only the petitioners sought to adopt the children. The trial judge found the petitioners were "fit and appropriate" as adopting parents. The record evidence was undisputed that the petitioners would provide the children with a permanent and stable home, which is the goal of the statutory scheme. The trial court erred in allowing the focus of the decision on whether to grant the adoption to shift to the issue of the paternal grandparents' visitation with the children.
We agree with Judge Thomas, in his dissent to the First District's majority decision, that the trial judge's granting of guardianships which make the paternal grandparent the guardian of the children's property and the maternal grandparent guardians of the children's persons is not a proper substitute for granting the petition for adoption. Such a split guardianship, in which there is a guardianship of the person and a separate guardianship of the child's property, is the antithesis of the right to permanence and stability that is afforded by adoptions. Guardianships require continuing judicial involvement, with the guardians required to file annual reports with the guardianship court until the guardian's ward reaches the age of majority. See § 744.3675, Fla. Stat. (2005). The reports must include detailed private information concerning the ward, including medical and mental health conditions, an examining physician's report, social condition, skills and needs, and a school progress report summary. § 744.3675, Fla. Stat. (2005). Guardianships also require annual accounting pursuant to section 744.3678, Florida Statutes (2005).
Unlike a guardianship, adoption declares the adopted child to be "legally the child of the adoptive parents and their heir at law and entitled to all the rights and privileges and subject to all the obligations of a child born to such adoptive parents in lawful wedlock." See § 63.032(2), Fla. Stat. (2005). The rights of adopted children are thus equally as extensive and permanent as the rights of natural children and provide a child with support, privacy, inheritance, and the right to make a claim for losses suffered if the adoptive parent is injured or killed. See § 732.108, Fla. Stat. (2005). Moreover, Ailish O'Connor, the court monitor in this case, testified that under an adoption, if the adoptive parent dies, the adoptive child also has the right to elect whether to use the adoptive parent's Social Security benefits or the deceased parent's Social Security benefits, and that here, the adoptive parents' Social Security benefits would likely be much higher than the deceased parents' benefits.
As the record indicates, the sole reason why the trial court denied the adoption was contrary to the very advantages that the Legislature created for adoption in making adopted children the same under the law as natural children. The trial judge apparently recognized that the granting of the visitation to the paternal grandparents would invade the privacy of the family unit if the petition for adoption was granted. The question of the paternal grandparents' visitation is answered by our decision in Von Eiff v. Azicri, 720 So.2d 510, 511 (Fla.1998), which held that section 752.01(1)(a), Florida Statutes (1993), was unconstitutional because it permitted mandated visitation based merely on the "best interests" of the child, "without first requiring proof of demonstrable harm to the child." 720 So.2d at 514. As the Court explained, grandparents have no legal right to visit grandchildren when the child's parents oppose the visitation if the parents are otherwise fit. See also Sullivan v. Sapp, 866 So.2d 28 (Fla.2004) (reiterating the principles announced in Von Eiff); Forbes v. Chapin, *985 917 So.2d 948 (Fla. 4th DCA 2005) (applying Von Eiff to disallow mandated grandparent visitation where father initially agreed to grandparent visitation and subsequently decided against it). Adoptive children and adopting parents are legally the same as natural children and natural parents. See, e.g., §§ 63.032(2), 63.172, Fla. Stat. (2005).[1]

CONCLUSION
Based on the above analysis, we answer the certified question in the affirmative. We find that the trial court abused its discretion in denying the petition for adoption. We quash the decision of the First District and direct that the case be remanded to the trial court with directions that the petition for adoption be granted.
It is so ordered.
ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., concurs in result only.
NOTES
[1] Of course, in view of the tragic facts of the deaths of both natural parents of these children and the stated willingness of the maternal grandfather to have visitation by the paternal grandparents, we urge that such visitation be voluntarily undertaken.