CASANUEVA, Judge.
Kelly Fazzini appeals the trial court’s order denying his petition to modify a domesticated State of Virginia judgment allowing Pamela Davis, his child’s maternal grandmother, visitation rights. Mr. Fazzi-ni alleges two instances of trial court error. First, he claims that the trial court erred in concluding that the Virginia judgment qualified for recognition in Florida under the Full Faith and Credit Clause of the Constitution of the United States. Second, he claims that the trial court erroneously denied his request to modify the Virginia judgment after its domestication under Florida law. As to the first claim, we affirm. But we find merit in the second and reverse.
Facts and Procedural History
Mr. Fazzini and his wife Heather were blessed with the birth of this their first child in June 2007. At this time, Mr. Fazzini was on active duty with the United States Navy and was stationed in Virginia where the child was born. In September 2007, three months after her child’s birth, Heather died tragically. A week after his *100 wife’s death, and because he was still on active duty, Mr. Fazzini placed the child into the custody and care of his own parents, Colin and Robin Fazzini. The paternal grandparents took the child to live with them at their home in Frostproof, Florida, until Mr. Fazzini could secure his discharge from the Navy. Within weeks after her daughter’s death, Mrs. Davis filed a suit seeking custody of or visitation with her grandchild. Mr. Fazzini defended against her suit but the parties eventually reached a settlement. Thereafter, in early February 2008 and just before he was discharged from the Navy, the Virginia court rendered a consent judgment giving Mr. Fazzini sole custody of the child and Mrs. Davis certain visitation rights. Upon his discharge from the Navy, Mr. Fazzini returned to Florida and moved in with his parents and his child.
Since his wife’s death, the relationship between Mr. Fazzini and Mrs. Davis has not been the warmest. Sometime after returning to Florida, Mr. Fazzini began dating another woman (Tiffany) who later became his fiancée. She moved in with him, his child, and the grandparents. While living together she acted, and the whole household referred to her, as the child’s mother. Mr. Fazzini and his fian-cée were married in May 2009. A year later, the new Mrs. Fazzini adopted the child. In order to be eligible to adopt the child, the adoption statute required that she have the consent of Mr. Fazzini. See § 63.042(2)(c)(l), Fla. Stat. (2010). It goes without peradventure that Mr. Fazzini readily consented to this adoption.
Soon after Mrs. Davis began to exercise her grandparent visitation rights, disputes arose between her and Mr. Fazzini. Their disputes centered on two issues: first, where Mrs. Davis’s visitations could occur and, second, when the child should be told about the biological mother’s death and the adoption. Mrs. Davis sought to tell the child immediately; Mr. Fazzini, due to other concerns, sought to delay the disclosure. To maintain parental control over his child’s life, in April 2008 Mr. Fazzini instituted a suit in Florida to domesticate the Virginia consent judgment and to modify it by terminating Mrs. Davis’s visitation rights.
The domestication and modification proceedings were contentious and protracted. Initially, the parties disagreed as to whether Florida or Virginia had jurisdiction to resolve their visitation dispute. In September 2008, the trial court conducted a telephonic hearing with the Virginia court and the two Virginia attorneys representing the parties there; also present with the trial court were the Florida attorneys representing the respective parties. The trial court thereafter rendered an order that found that the Virginia court had established jurisdiction over the child and Mr. Fazzini. In this order the trial court further stated that it would not disturb that determination, but that
should the Commonwealth of Virginia relinquish jurisdiction of this matter, this Court may, upon proper application, determine to take in personam jurisdiction over the minor child and the subject matter jurisdiction of this action. The Court did advise the parties present in both Florida and Virginia, however, that should this Court take jurisdiction over the minor child and the subject matter of this action, the Virginia Orders in place would be given full faith and credit in the State of Florida unless modified by the State of Florida Court upon proper application being made therefore[ ] and a proper showing being demonstrated for any change.
In April 2009 the Virginia court relinquished jurisdiction to Florida and the *101 case thereafter proceeded under Florida jurisdiction.
On June 8, 2011, the trial court held an evidentiary hearing on Mr. Fazzini’s third amended petition to domesticate the Virginia judgment and to modify it. At the time of this hearing, Mrs. Davis had only visited the child four times since the child moved to Florida at the age of three months and not at all since December 2009. Mr. Fazzini, Mrs. Tiffany Fazzini, Mrs. Robin Fazzini, and Mrs. Davis testified at the hearing. The parties presented evidence of hostile emails and returned envelopes and letters, described the four visits Mrs. Davis had had in the intervening period, and argued their respective positions. Mrs. Davis’s main concern, understandably, was to maintain contact with this grandchild, all that she had left of her deceased daughter; Mr. Fazzini’s main concern, also understandably, was to parent his child without what he considered detrimental interference from Mrs. Davis whom he no longer trusted.[1]
Based upon the testimonies and evidence, the trial court entered a final judgment finding that the Virginia order was domesticated in Florida and that Virginia had relinquished jurisdiction to the trial court. The final judgment went on to state:
What [Mr. Fazzini] seeks to do is modify the agreed order out of existence. He is asking that the rights awarded to [Mrs. Davis] by his voluntary and counseled agreement be terminated. He alleges in his third amended petition that there has been a substantial change in circumstances which justify terminating those rights to which he agreed in Virginia. [Mr. Fazzini] argues that the legal standard should not be the traditional] family law standard announced in Wade v. Hirschman, 903 So.2d 928 (Fla.2005) [,] because Florida does not recognize the grandparent’s right which is recognized in Virginia. The argument is that the lawful order of Virginia should not be given Full Faith and Credit in Florida.
Although this is not a custody case, [Mr. Fazzini] has styled it as such in his pleadings. It certainly is a time-sharing case. The Court can find no case which suggests any legal standard for modification of a time-sharing order other than a showing by the moving party that a substantial and significant change in circumstances of the parties must first be established by the evidence, and only then can the Court go to the second step of determining whether the modification sought is in the best interest of the child. The change must be significant, material, involuntary, permanent, and unanticipated. Measured against this standard [Mr. Fazzini] cannot support his modification request on the adoption of the child by [Mrs. Tiffany Fazzini] as he voluntarily consented to the adoption. The distrust between [Mr. Fazzini] and [Mrs. Davis] is not a change in circumstances. The other grounds alleged in paragraph 7 of the third amended petition are not supported by the evidence.
Mr. Fazzini appeals this order denying him modification of the Virginia judgment. He raises two issues: (1) that the trial court erred as a matter of law by giving the Virginia judgment full faith and credit; and (2) that the trial court applied the incorrect standard in denying modification. As noted previously, on the first issue we disagree and conclude that the trial court was constitutionally bound to give the Vir *102 ginia judgment full faith and credit by reason of the Full Faith and Credit Clause, article IV, section 1 of the United States Constitution (“Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.”). See Baker v. Gen. Motors Gorp., 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). It is Mr. Fazzini’s second issue that has merit and requires that we reverse the trial court’s order denying modification of the Virginia court’s judgment that granted Mrs. Davis visitation rights.
Discussion
Although he sought domestication of the Virginia judgment, and received it,[2] Mr. Fazzini contends that the trial court should not have given the Virginia judgment full faith and credit. These two concepts — domestication of a foreign order and full faith and credit — are inextricably interwoven and one cannot be had without the other. Section 55.502, Florida Statutes (2008), defines “foreign judgment” as “any judgment, decree, or order of a court of any other state or of the United States if such judgment, decree, or order is entitled to full faith and credit in this state.” The record establishes without question that the Virginia court, at the time it entered the judgment settling the suit between Mrs. Davis and Mr. Fazzini, possessed subject matter jurisdiction and personal jurisdiction under its codification of the Uniform Child Custody Jurisdiction and Enforcement Act. See Va. Code. Ann. §§ 20-146.1 to .38 (2008). Thus the trial court was required to recognize the Virginia judgment, give it full faith and credit, and domesticate it. See Zitani v. Reed, 992 So.2d 403, 404 (Fla. 2d DCA 2008) (holding that when the judgment was entered by a California state court that had both subject matter jurisdiction over the claim and personal jurisdiction over the complaining party, a Florida court is “generally obliged to give full faith and credit to [that] foreign state’s judgment”). When a foreign judgment is domesticated, it becomes enforceable as a Florida judgment. See Herman v. Herman, 658 So.2d 1182, 1182-83 (Fla. 4th DCA 1995) (holding that a New Jersey judgment, domesticated by order in Florida, “would have the same force and effect as a judgment originally entered by the courts of this state”). Thus the trial court did not err in finding that the Virginia judgment was entitled to full faith and credit.
However, upon the foreign judgment being domesticated, it does not follow that this particular order was not subject to modification after being given full faith and credit.[3] We recognize that some orders — domestic or foreign — are not subject to modification, such as an order of equitable distribution in a dissolution of marriage action. See, e.g., Weiss v. Weiss, 973 So .2d 1247, 1250 (Fla. 2d DCA 2008) (“[A] Florida court must give full faith and credit to those valid provisions of a foreign divorce decree that are not subject to modification.” (citing Sackler v. Sadder, 47 So.2d 292, 293 (Fla.1950))). The trial court, upon giving the Virginia judgment *103 full faith and credit, deemed the Virginia order a time-sharing judgment. It seems to be a “hybrid” time-sharing judgment because a time-sharing judgment is usually between parents rather than between a parent and a grandparent. Nevertheless, even as a hybrid time-sharing judgment, it is still subject to modification. See § 61.13(3), Fla. Stat. (2011) (“For purposes of establishing or modifying ... a time-sharing schedule, ... the best interest of the child shall be the primary consideration.”).
Our guide in this case is Wade v. Hirschman, 903 So.2d 928 (Fla.2005). Although Wade arose in the context of a modification of custody, time-sharing and custody are sufficiently analogous issues. In Wade, our supreme court laid out the test to be met by the movant seeking modification of a custody order:
[T]he movant [seeking modification of custody] must show both that the circumstances have substantially, materially changed since the original custody determination and that the child’s best interests justify changing custody. Furthermore, the substantial change must be one that was not reasonably contemplated at the time of the original judgment.
Id. at 931 n. 2 (quoting Cooper v. Gress, 854 So.2d 262, 265 (Fla. 1st DCA 2003)); see also Straney v. Floethe, 58 So.3d 374, 375 (Fla. 2d DCA 2011) (reiterating that under Wade the test to be used in a modification proceeding is whether “(1) a substantial and material change in circumstances has occurred since the entry of the final judgment, (2) it is in the child’s best interest to modify custody, and (3) the change in circumstances was not reasonably contemplated when the trial court entered the original final judgment”). In applying this test to Mr. Fazzini’s petition, the trial court added a fourth factor— involuntariness — by finding that the stepparent adoption was “voluntary” and that therefore this voluntary act had precluded modification. Whether Mr. Fazzini’s voluntary acquiescence to Mrs. Fazzini’s adoption of his child was required by statute or not, voluntariness is generally applicable, and rarely at that, only in cases where the custodial parent has relocated. See, e.g., Kuttas v. Ritter, 879 So.2d 3 (Fla. 2d DCA 2004); Bryant v. Meredith, 610 So.2d 586 (Fla. 2d DCA 1992). Adding this fourth factor to modification of a time-sharing judgment, whether a pure time-sharing judgment or a hybrid, is not supported by the statute or case law.
Although the trial court erred in adding a fourth factor, we agree with the trial court that the distrust between Mr. Fazzi-ni and Mrs. Davis was not a change in circumstances sufficient to ground modification. Cf Chapman v. Prevatt, 845 So.2d 976, 981 (Fla. 4th DCA 2003) (“That parents do not get along with one another is not a substantial or material change in circumstances which, without more, justifies a change of custody.”). Nevertheless, this factor is irrelevant to the disposition of this case. Mr. Fazzini established that there has been a substantial and material change in circumstances since entry of the Virginia judgment that was not reasonably contemplated, i.e., his remarriage, the stepparent adoption, and Mrs. Davis’s interference with Mr. Fazzini’s parental decision-making. But beyond these materially changed circumstances is the public policy of Florida, established in law, which subordinates grandparent visitation rights to the superior rights of a parent. See M.S. v. D.C., Jr., 763 So.2d 1051,1055 (Fla. 4th DCA 1999) (noting that in Florida “the grandparents’ interests, and even the best interest of the children, must yield to the fundamental right of privacy when demanded by the parent except where the state has a compelling interest, as when it *104 acts to prevent demonstrable harm to the child”).
Mrs. Davis, as the maternal grandmother in this case, has virtually no rights as a grandparent in our state because of the privacy right’s protection enshrined in our state constitution. Art. I, § 23, Fla. Const. (“Every natural person has the right to be let alone and free from governmental intrusion into the person’s private life except as otherwise provided herein.”). In Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998), the Florida Supreme Court gave constitutional dimension to the operational impact of Florida citizens’ right to privacy in the interplay between parent and grandparent. Specifically, the court concluded that section 752.01(l)(a), Florida Statutes (1993), which authorized an award of grandparent visitation rights when one or both parents of the grandchild were deceased, was facially unconstitutional.[4] 720 So.2d at 511. The court found that this statute infringed upon a parent’s protected liberty interest in decisions regarding the best manner to raise his or her children, and the government’s authority to intrude upon this fundamental right only arose upon a showing of demonstrable harm to the child. The supreme court’s precisely phrased rationale is applicable to Mr. Faz-zini’s case:
[T]he death of a biological parent may be a traumatic event for a child and ... a family may deal with that tragic event in many different ways. Some parents may decide that counseling is beneficial for the child; others may disagree. Some parents may decide that the child should spend more time with the deceased biological parent’s grandparents, siblings or close friends. Others may restrict those relationships. Interaction with the grandparents may help ease the pain of loss for both grandparent and child and, thus, be beneficial to the child. However, as we stated in Beagle [v. Beagle, 678 So.2d 1271 (Fla.1996)], “[i]t is irrelevant, to this constitutional analysis, that it might in many instances be ‘better’ or ‘desirable’ for a child to maintain contact with a grandparent.” [Id] at 1277 (quoting Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, 773-74 (1995)).
Von Eiff, 720 So.2d at 516. There has been no showing of legally cognizable harm in Mr. Fazzini’s case. Thus, Florida’s constitutional right of privacy and de-cisional law give to this parent the sole authority to determine what is best for his child, without interference from a grandparent.
Mr.. Fazzini’s preference, having constitutional support, is controlling on whether to allow Mrs. Davis visitation with his child. Our sister court’s holding in Forbes v. Chapin, 917 So.2d 948 (Fla. 4th DCA 2005), supports this. In Forbes, the parents had divorced and their child’s maternal grandmother had petitioned for and been granted visitation rights. Id. at 949. The father subsequently remarried, and his new wife adopted the child after the biological mother voluntarily consented to termination of her parental rights. Id. at 950. The appellate court “address[ed] the question of whether a parent’s agreement *105 to visitation by a grandparent with the parent’s minor child waives the parent’s right to later enforce his constitutional privacy right to raise his child free from government intrusion and thus, prevents him from later revoking his agreement for visitation.” Id. at 951. The Fourth District answered this question in the negative. Id. The court concluded that
the father did not waive his constitutional privacy rights by entering into the original agreed order for grandparent visitation rights. We find that any right the grandmother may have had under the order did not survive the stepparent’s adoption based on the right to privacy guaranteed by article I, section 23 of the Florida Constitution....
Id. at 953. The same rule applies here.
Conclusion
In order to avoid interference with his parental rights vis-á-vis Mrs. Davis and the visitation rights she had acquired in Virginia, Mr. Fazzini properly domesticated the Virginia judgment and sought to modify it based on his substantial, material, and unanticipated change in circumstances. Based on article IV, section 1 of the Florida Constitution and Von Eiff, the trial court erred in denying Mr. Fazzini’s petition to modify the domesticated Virginia judgment.
Reversed and remanded with instructions to grant the petition to modify the domesticated judgment to terminate grandparent visitation.
KHOUZAM and BLACK, JJ., Concur.

. Besides the problems already alluded to, Mrs. Davis had filed a motion in the Virginia court, later voluntarily dismissed, to have Mr. Fazzini held in contempt of court for interfering with her visits.

. Neither party disputes that the trial court properly domesticated the Virginia judgment. See §§ 55.501-509, Fla. Stat. (2008) (the Florida Enforcement of Foreign Judgments Act).

. Courts have previously used the term "su-persession” to describe the act of modifying a foreign judgment upon domestication in order to comply with Florida law. See, e.g., D.R.-T. v. O.M., 244 So.2d 752 (Fla. 2d DCA 1971) (holding that court-ordered support for an illegitimate child had to end when the child reached eighteen under Florida law despite a California judgment, domesticated in Florida, requiring support to continue until the child was twenty-one).

. In Beagle v. Beagle, 678 So.2d 1271, 1272 (Fla. 1996), the supreme court had previously struck section 752.0 l(l)(e), Florida Statutes (1993), as being violative of the parent’s express constitutional right of privacy. Section 752.01(l)(e) stated that the grandparent had a right to visitation when the minor was "living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.”